DON A. CHAPIN, APPELLEE, v. HERBERT C. NOLL, APPELLANT.

FILED APRIL 5, 1929. No. 26471.

*Hainer, Flansburg & Lee, John W. Yeager* and *B. R. Stone,* for appellant.

*Stewart, Stewart & Whitworth, contra.*

Heard before ROSE, DEAN, GOOD, THOMPSON and DAY, JJ., and REDICK and SHEPHERD, District Judges.

DEAN, J.

This action was begun by Don A. Chapin, plaintiff, to recover $75,000 from Herbert C. Noll, defendant, for an alleged fraud which plaintiff charges was perpetrated against him in the purchase of a certain business carried on by defendant in Lincoln under the trade-name of "Noll Electric Company." Defendant was engaged at the time in the sale and repair of electrical supplies, automobile accessories and batteries, and also Atwater-Kent radios and their accessories. The jury returned a verdict for plaintiff for $31,583. Defendant appealed.

The parties executed a written contract under date of March 8, 1926. An excerpt therefrom covers the part of the contract which is in disagreement here. The excerpt follows:

"Party of the first part hereby sells, conveys, and delivers all his right, title and interest in the business at 317-321 South Eleventh street, Lincoln, Nebraska, to party of the second part, and party of the second part hereby purchases all of said business for the sum of five thousand ($5,000) dollars in cash, receipt whereof is hereby

acknowledged, and the total inventory of the business as of March 8, 1926, to be paid by party of the second part to party of the first part immediately upon completion of the inventory. Said inventory to be taken as follows: All goods on hand January 1, 1926, are to be included at the same price as listed in inventory of that date. All goods purchased since January 1, 1926, are to be included at cost price. All goods on hand January 1, 1926, but not listed in inventory of that date, are included in this sale but are not to be priced in inventory. The property herein sold by party of the first part to party of the second part includes all merchandise on hand, furniture, fixtures, machinery, equipment, supplies and contracts in or on the aforesaid premises whether shown or not shown in the aforesaid inventory, and party of the first part hereby covenants with party of the second part that he is the lawful owner of said property, that it is free from all incumbrance, that he has good right to sell the same as aforesaid, and that he will warrant the same as against the claims and demands of all persons whomsoever."

Plaintiff charges that, as an additional inducement to him to enter into the contract, defendant sold to him the exclusive right to the sale and distribution of Atwater-Kent radios in the Lincoln territory, at a discount of 50 per cent. from the list price thereof so long as defendant held the agency therefor. This radio distribution right in itself was counted by the parties one of the most valuable business adjuncts in the sales right field in Lincoln.

Plaintiff also charges that, before and up to the moment the contract was signed, the defendant falsely represented to him that the business paid him $28,000 in the year preceding the sale to plaintiff, and that, from the Lincoln business, together with a like business in Omaha, $170,000 in profits was realized in one year by defendant. Plaintiff also testified that, upon reading the contract, there were some things therein that he asked defendant to explain, and that "one was that he was selling

me a lot of contracts and wasn't naming what the contracts were and that he wasn't naming the contracts; they belonged to the business; he was selling all of the contracts and it wasn't necessary to pick out just one contract and name just one contract." Plaintiff testified that the defendant told him that, in respect of the Atwater-Kent business, "they were not supposed to have subjobbers or subdistributors and we would have to work it along; that it would be all right, but he didn't want to put it in writing or do anything that would jeopardize his account with them, but as long as he had (orally) named all of the contracts which he had, he told me that was one of them and it was named with the rest of them, and he didn't except that and he didn't except any of the others, and I took it for granted that that (Atwater-Kent) was one of the contracts." Plaintiff also testified that he subsequently ordered radios from defendant, but that he refused to fill the orders sent him for radios and shipped only a trifling number. It also appears from plaintiff's evidence that he made repeated appointments with defendant to get a settlement of the disputed differences between them, but that defendant never did "show up."

Continuing, the plaintiff testified that he soon afterwards discovered that the defendant, upon whose statements and representations in respect of the business he implicitly relied, had greatly overcharged, cheated, and defrauded him in the transaction; that the profits which defendant represented he had realized in 1925, instead of being $28,000, approximated only about one-half of that sum; that he afterward discovered that the inventory which defendant took on January 1, 1925, was in the sum of $16,429.21, but that defendant falsely and wickedly represented, and informed him, that his profits were almost twice that sum; that the Atwater-Kent rights, which defendant represented he had included in the sale, but which were not so included, were worth $30,000; that subsequently plaintiff went to defendant and informed him that he had checked the inventory and had found out that he had

been cheated and defrauded, all as herein pointed out, and that he tried to get defendant to adjust the matters, but that he would not keep any appointment with plaintiff to right the grievous wrongs which he had perpetrated.

The defendant denied plaintiff's charges of fraud. He admitted that he received $5,000 in cash for the "good-will" of the business and also $36,800 as a second payment. Defendant also admitted that the sale contract was signed before the inventory of the merchandise was completed. But he also testified that none of the used, obsolete, or unsalable merchandise was included in the inventory or charged to plaintiff. He also testified that the business was worth all that defendant paid him, namely, $51,462.74, and that at the time of the sale it was making a good profit; that when plaintiff complained that the merchandise was listed at an extravagant figure on the inventory, defendant gave him a check for $1,494.42, and he contends that this sum was in full settlement of all claims by plaintiff against him. Defendant denied plaintiff's complaint that he engaged in any business in Lincoln after March 8, 1926, of the same character as that he had sold to plaintiff. He also testified that plaintiff wanted him to incorporate the Atwater-Kent radios in the written contract, but that he refused to do so, and told plaintiff that he, the plaintiff himself, could sign a dealer's contract with the Atwater-Kent company; that he had never discussed radios with plaintiff in connection with the business until the final contract was signed. On the cross-examination, however, defendant admitted that plaintiff did ask him about the radios. On this point defendant testified: "I told him I wasn't selling him the radio business, I was only selling him the automotive business, and he said, 'Well, you agreed to sell me everything as of the January 1st inventory, everything that was in the inventory;' and I said, 'I know it;' I said, 'I didn't think you were interested in the radio business;' and I says, 'All right, I will keep my word.'"

On further cross-examination, the defendant appeared

to be somewhat confused as to what he had stated in a certain deposition wherein he averred that he had never given plaintiff a statement of the Lincoln business before the sale, but at the trial he stated, first, that he had given him a statement, and finally that he did not know whether he had done so.  Confronted with a financial statement which the bookkeeper had prepared at defendant's direction, defendant said he had never seen it before and that he did not have it prepared for him, but when shown a letter which contained a request therefor he admitted that he had directed that the financial statement be prepared.

A financial statement was given by defendant to plaintiff for examination.  The sum of the inventory of the goods for January 1, 1925, is shown thereon to be $27,429.21, and the net profit is shown to be $28,104.76, for the same year.  But the evidence of defendant's bookkeeper, Mrs. Fern Westhafer, tends to prove that the true inventory, as shown by the store records, totaled only $16,429.21 for the same year, instead of $27,429.21 as claimed by defendant on the financial statement given to plaintiff.  This witness informed the jury that, if the figures were changed, they were changed at defendant's direction.

A witness who was formerly employed by defendant in his store testified that the yearly worth of the radio contract for the Lincoln trade and territory was probably $25,000 to $30,000 to any dealer.  Another witness who was in defendant's employ for some time before the sale, and was present when the inventory of the stock was taken, had about 10 years' experience in selling stock and was familiar with market values.  He informed the jury that about 30 per cent. of the Noll stock was invoiced when plaintiff purchased it, and that it was not worth over 25 cents on the dollar, and the remainder of the stock was not worth more than 50 per cent. of the list or wholesale price; that there were some obsolete and used parts in stock, and that the used parts were in with the new stock.

He stated that, in his opinion, the goods that were inventoried were worth from $20,000 to $22,000. Another of Noll's former employees told the jury that at the time plaintiff took over the business, in his opinion, 40 per cent. of the stock was obsolete and only about 10 per cent. or 20 per cent. was usable.

A certified public accountant testified, on the part of plaintiff, and he informed the jury that he had checked the books of the business and found that the profit for 1925 should be reduced from $28,000, as listed by defendant, to about $14,000, and that the inventory should be approximately $12,000 less than shown by the financial statement for 1925 which defendant furnished to plaintiff. Another accountant, also called by plaintiff, testified that, from a computation of the books of defendant and a check of the inventory list, defendant's inventory should be $21,667.21, instead of $38,315 as listed by defendant.

Defendant argues: "The written contract was complete in its terms. The consideration moving from the defendant was specific and executory in character, and the contract obligation could not be enlarged nor the consideration supplemented by proof of an oral agreement of a further consideration." And in support of the argument 22 C. J. 1172 is cited, which reads: "For the same reason, where the writing is complete upon its face, an additional executory consideration cannot be shown by parol, or, as it is sometimes expressed, new terms cannot be engrafted into an agreement by parol under the guise of varying the consideration."

But the rule is otherwise where the element of fraud abounds in the transaction as in the present case, and in such case the following rule is pointed out by a recognized authority and it is clearly applicable to the facts throughout:

"It is well established that, as fraud vitiates everything which it touches, parol evidence is always admissible to show, for the purpose of invalidating a written instrument, that its execution was procured by fraud, or that, by rea-

son of fraud, it does not express the true intentions of the parties." 22 C. J. 1215.

The text goes farther and points out that the rule is not rendered inapplicable, even though there is an agreement between the parties or a provision in the contract "that no verbal agreements affecting its validity will be recognized. * * * Only the victim of fraud can be permitted to show such fraud by extrinsic evidence; one is estopped to show his own fraud to impeach a writing which is sought to be used against him."

In *Schuster v. North American Hotel Co.*, 106 Neb. 672, at page 679, this rule is aptly stated in an opinion by Flansburg, J.:

"The rule that evidence of a parol promise cannot be shown for the purpose of enlarging or changing the written contract, where the action is one to enforce the contract, is not applicable where the action is in fraud for damages or to rescind the contract and to prove the oral promise as the fraudulent representation which acted as an inducement to the contract."

In *Sanders v. Nightengale,* 109 Neb. 667, we held:

"In an action for damages for fraud and deceit in the sale or exchange of property, it is for the jury to determine from the evidence whether facts and circumstances are established which show that plaintiff was justified in relying on the representations made by defendant, and whether such representations were made to induce the exchange of properties." See also *Farmers Cooperative Grain Co. v. Startzer,* 112 Neb. 19.

The record of conviction of the defendant for the commission of a felony in a Texas court, on the defendant's plea of guilty, was received in evidence. The record in the Texas court had to do with the theft of certain personal property. Defendant contends that it was error for the court to permit plaintiff to introduce the Texas record in evidence. But section 8848, Comp. St. 1922, provides:

"A witness may be interrogated as to his previous con-

viction for a felony. But no other proof of such conviction is competent except the record thereof."

We do not think the court erred in the respect noted.

We have examined every material question presented in behalf of the respective parties and it appears to us that reversible error has not been pointed out. That the verdict is abundantly supported by the evidence sufficiently appears. It is well established.that the jury in a proper case are the sole triers of questions of fact. Other assignments of alleged error in respect of instructions and of the introduction of certain of the evidence are urged which we have examined and find are without substantial merit. It follows that the judgment of the district court must be, and it hereby is,

AFFIRMED.