Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/18/2020 09:08 AM CDT

Patrick S. Nathan and Kelsey M. Nathan,
appellants and cross-appellees, v. Jason McDermott
and Brandon Hoy, appellees and cross-appellants,
and Chris Nielsen and Results Business
Advisors LLC, appellees.

___ N.W.2d ___

Filed June 26, 2020.    No. S-19-637.

1. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

2. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

3. ____: ____. In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

4. **Contracts.** The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review.

5. ____. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.

6. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

7. **Contracts.** A determination as to whether an ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties have suggested opposite meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.

8. **Contracts: Fraud: Election of Remedies.** A party who fraudulently induces another to contract and then also refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims that may be pursued to satisfaction consecutively.

9. **Pleadings: Actions: Contracts: Torts.** To determine whether an action is based on a contract or a tort, a court must examine and construe the petition's essential and factual allegations by which the plaintiff requests relief, rather than the legal terminology utilized in the petition or the form of the pleading. Consideration must be given to the facts which constitute the cause of action.

10. **Pleadings: Actions: Breach of Contract: Torts.** If the petition contains a cause of action for breach of contract, additional averments appropriate to a cause of action for a wrong will not change the action from contract to tort, and if there is a doubt as to the character of the action, it will be resolved in favor of an action in contract. In such an instance, the statements appropriate to an action in tort will be considered surplusage.

11. **Promissory Notes: Words and Phrases.** Absent a defense, a promissory note is ordinarily a stand-alone, unqualified, enforceable promise to pay.

12. **Pleadings: Proof.** The burden of both pleading and proving affirmative defenses is upon the defendants, and when they fail to do so, they cannot recover upon mere argument alone.

13. **Limitations of Actions: Recoupment.** The defense of recoupment survives as long as a plaintiff's cause of action exists, even if affirmative legal action upon the subject of recoupment is barred by the statute of limitations.

14. **Actions: Recoupment.** Recoupment must arise out of the same transaction or occurrence which is the basis of a plaintiff's action and is merely defensive, that is, does not seek an affirmative judgment in the action.

15. **Claims: Recoupment: Proof.** To state an affirmative defense of recoupment, the defendant must prove the elements of his claim and that it occurred in the very same action as the plaintiff's claim against him.

16. **Fraud: Proof.** A fraudulent misrepresentation claim requires a plaintiff to establish the following elements: (1) A representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result.

17. **Negligence: Fraud.** Negligent misrepresentation has essentially the same elements as fraudulent misrepresentation with the exception of the defendant's mental state.

18. \_\_\_\_: \_\_\_\_. In both negligent and fraudulent misrepresentation cases, whether the plaintiff exercised ordinary prudence is relevant to whether the plaintiff justifiably relied on the misrepresentation when the means of discovering the truth was in the plaintiff's hands.

19. **Fraud.** A plaintiff is justified in relying upon a positive statement of fact if an investigation would be required to discover the truth.

20. \_\_\_\_. In determining whether an individual reasonably relied on a misrepresentation, courts consider the totality of the circumstances, including the nature of the transaction; the form and materiality of the representation; the relationship of the parties; the respective intelligence, experience, age, and mental and physical condition of the parties; and their respective knowledge and means of knowledge.

21. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

22. **Principal and Agent.** Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his or her behalf and subject to his or her control, and the consent of the other to so act.

23. \_\_\_\_. An agent and principal are in a fiduciary relationship such that the agent has an obligation to refrain from doing any harmful act to the principal, to act solely for the principal's benefit in all matters connected with the agency, and to adhere faithfully to the instructions of the principal, even at the expense of the agent's own interest.

24. **Pleadings: Evidence: Trial.** A party may at any and all times invoke the language of his opponent's pleadings on which the case is being tried on a particular issue as rendering certain facts indisputable.

25. **Pleadings: Evidence: Waiver.** The pleadings in a cause are not a means of evidence, but a waiver of all controversy, so far as the opponent may desire to take advantage of them, and therefore, a limitation of the issues.

26. **Principal and Agent.** As a general rule, where an obligation is that of a principal, a court cannot enforce the obligation against the agent as long as he or she is merely acting as agent.

27. **Principal and Agent: Liability.** An agent may be held liable for the agent's conduct, such as misrepresentation of a material fact, during a transaction on behalf of the principal.

28. \_\_\_\_: \_\_\_\_. An agent can be held liable if the agent makes some representation or performs some act on the agent's own responsibility without authorization from the principal.

29. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.

30. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

31. **Actions: Attorney Fees: Words and Phrases.** A frivolous action is one in which a litigant asserts a legal position wholly without merit; that is, the position is without rational argument based on law and evidence to support the litigant's position.

32. **Attorney Fees: Words and Phrases.** The term frivolous connotes an improper motive or legal position so wholly without merit as to be ridiculous. Any doubt about whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question.

Appeal from the District Court for Douglas County: Leigh Ann Retelsdorf, Judge. Affirmed.

James D. Sherrets and, on brief, Jared C. Olson, of Sherrets, Bruno & Vogt, L.L.C., for appellants.

Scott D. Jochim and Matthew W. Harris, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

The buyers of a business pursuant to a written purchase agreement sued the sellers and their agents on various contract and tort theories, and the sellers counterclaimed for amounts owing under promissory notes. From a dismissal under Neb. Ct. R. Pldg. § 6-1112(b)(6) of the agents and a summary

judgment for the sellers, the buyers appeal. The sellers cross-appeal the denial of attorney fees.

We resolve three broad issues. First, because the agreement's indemnification clause—particularly, the word "aware"—was unambiguous and the misrepresentation claim arose from identical facts, undisputed facts supported the summary judgments for the sellers. Second, where the complaint admitted the agency relationship with the sellers, the agreement incorporated in the buyers' complaint disclaimed reliance on the agents' representations, and the complaint lacked an allegation of action beyond the scope of the relationship, the complaint stated no claim against the agents. Third, the trial court, resolving doubt of the buyers' legal positions in their favor, did not abuse its discretion in denying attorney fees to the sellers. We affirm the judgment below.

## II. BACKGROUND

In this section, we summarize only the central facts and procedures. Additional background will be set forth in the analysis section.

Jason McDermott and Brandon Hoy were the sole former shareholders of Nebraska Medical Mart II, Inc. (NMM). In April 2015, McDermott and Hoy hired Results Business Advisors LLC (RBA) to broker a sale of NMM. Chris Nielsen of RBA represented McDermott and Hoy.

In June 2015, Patrick S. Nathan and Kelsey M. Nathan communicated with RBA and entered into negotiations for the purchase of NMM. During the negotiations, most communications with the Nathans went through Nielsen. During the due diligence period, McDermott and Hoy sent several financial statements to the Nathans. These statements were unaudited.

In July 2015, the Nathans executed an agreement with McDermott and Hoy to purchase all the shares of NMM for $1.1 million. The Nathans paid $990,000 at the time of closing and executed promissory notes to McDermott and Hoy for the remaining balance. McDermott's promissory note was for

$66,000, and Hoy's note was for $44,000. The Nathans made no payments on the promissory notes.

The district court's order stated, "After gaining control of NMM, the Nathans reviewed NMM's books and financial records and discovered that the information and documents provided during negotiations contained misrepresentations about NMM's financial situation." In mid-October 2015, the Nathans emailed documents detailing the financial discrepancies to their attorney. In mid-December 2015, the Nathans' attorney sent a formal notice of their claims and a demand for indemnification to McDermott and Hoy.

In the amended complaint, the Nathans sought damages for breach of contract, bad faith, misrepresentation, and breach of fiduciary duty against McDermott, Hoy, RBA, and Nielsen. In McDermott and Hoy's answer, they counterclaimed for breach of contract concerning the promissory notes.

The parties filed several motions. RBA and Nielsen filed a motion to dismiss the Nathans' complaint for failure to state a claim. McDermott and Hoy filed a motion for summary judgment on all claims and counterclaims and sought attorney fees. The Nathans filed a motion for partial summary judgment on their claims against McDermott and Hoy.

The district court granted RBA and Nielsen's motion to dismiss. The district court granted McDermott and Hoy's motion for summary judgment on all claims and counterclaims. It denied McDermott and Hoy's motion for attorney fees.

The Nathans moved to alter or amend the district court's order on summary judgment. The court granted the motion in order to address the affirmative defense of recoupment but did not modify the judgment, because, the court concluded, the Nathans were not entitled to recoupment.

The Nathans filed a timely appeal, and McDermott and Hoy cross-appealed. We moved the case to our docket.[1]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

As authorized by court rule, we submitted the case without oral argument.[2]

### III. ASSIGNMENTS OF ERROR

The Nathans assign, reordered and restated, that the district court erred in (1) granting McDermott and Hoy's motion for summary judgment by finding that (a) the Nathans failed to meet the notice requirements of § 7.6 in the purchase agreement and (b) § 7.6 of the purchase agreement barred the Nathans' misrepresentation claim; (2) awarding McDermott and Hoy monetary damages on their motion for summary judgment on their counterclaims; (3) disregarding the Nathans' affirmative defense of offset, setoff, and recoupment; (4) weighing evidence and evaluating the reasonableness of the Nathans' action on a motion for summary judgment; (5) granting the motion to dismiss as to RBA by finding that (a) RBA did not owe the Nathans any fiduciary duties, (b) the claims against RBA were barred by §§ 3.5 and 9.2 of the purchase agreement, and (c) the Nathans could not rely on any factual misrepresentations made by RBA regarding the purchase of NMM; and (6) denying the Nathans' motion for summary judgment without a hearing.

On cross-appeal, McDermott and Hoy assign that the district court erred in failing to sanction the Nathans for knowingly submitting false testimony to the court and in failing to award McDermott and Hoy attorney fees.

### IV. ANALYSIS

[1] Before we delve into the parties' arguments on appeal, we quickly dispose of the Nathans' last assignment of error: The district court erred in denying their motion for summary judgment without a hearing. This assignment was not argued in the Nathans' brief. To be considered by an appellate court, an alleged error must be both specifically assigned

---

[2] See Neb. Ct. R. App. P. § 2-111(B)(1) (rev. 2017).

and specifically argued in the brief of the party asserting the error.[3] We do not consider it.

### 1. CLAIMS INVOLVING McDERMOTT AND HOY

### (a) Additional Background

#### (i) Pleadings

In the amended complaint, the Nathans alleged that McDermott and Hoy made several material misrepresentations regarding NMM's finances, which the Nathans relied upon to purchase NMM. They alleged that McDermott and Hoy breached several warranties and refused to indemnify the Nathans as the purchase agreement required. Further, they alleged that McDermott and Hoy breached a duty of good faith and fair dealing by making multiple misrepresentations, breaching warranties, and refusing to indemnify. As a result of the misrepresentations and breaches of contract, the Nathans claimed, they suffered a loss of no less than $695,000.

In McDermott and Hoy's answer to the amended complaint, they asserted counterclaims for breach of promissory notes. They alleged that they each were the holder and payee of a promissory note, they performed and satisfied their obligations under the notes, the Nathans defaulted on the notes by failing to make payment when due, the Nathans failed to cure the default, and McDermott and Hoy were entitled to payment of the outstanding amount plus interest.

The Nathans filed a reply to McDermott and Hoy's counterclaims (styled as a response)[4] and an alleged affirmative defense, including "setoff, offset, and recoupment against all amounts purportedly due and owing to [McDermott and Hoy] as a result of the misrepresentations and wrongdoing asserted in the [amended complaint]."

---

[3] *Adair Holdings v. Johnson*, 304 Neb. 720, 936 N.W.2d 517 (2020).

[4] See Neb. Ct. R. Pldg. § 6-1107.

### (ii) Purchase Agreement

In the purchase agreement, McDermott and Hoy represented that all the financial statements provided were prepared in accordance with "GAAP," which the agreement defined as "United States generally accepted accounting principles consistently applied and maintained throughout the applicable periods"; were complete and consistent with the books and records of NMM; and, "in light of the circumstances under which such statements were made, true, correct and complete in all material aspects."

Section 7 of the purchase agreement set forth the indemnification provisions. The parties agreed that except for fraud claims, their exclusive remedy for a breach of the agreement was the indemnification provisions. McDermott and Hoy agreed to indemnify the Nathans from all losses incurred by the Nathans or NMM resulting from "any material breach of any representation or warranty of [McDermott and Hoy]." A party claiming a loss under the agreement was required to send notification "in writing within forty-five (45) days after the [claiming party] becomes aware, or should have reasonably been aware, of any such claim." The agreement required the notice to describe any claim in reasonable detail.

### (iii) Evidence of Financial Discrepancies

Prior to closing, the Nathans received an email from their lender. From NMM's financial documents provided by the Nathans, the lender detailed several financial discrepancies. The balance sheets showed a negative change in net worth of about $275,000. The lender commented that with so many changes from year to year on NMM's profit and loss statements, "it is very hard to trust a lot of their numbers." It detailed that the "realtor has over calculated the actual cash flow of the business." It discussed that the "realtor's" financial stabilization statement of actual cash flow and his narrative cannot be supported by the income tax returns and balance sheets submitted. It noted a discrepancy based on how

NMM handled leased equipment and stated that the Nathans "could find out too late that [NMM] actually did not properly account for these lease sales and the business is not nearly as profitable as [NMM] made it out to be." Lastly, the lender described that the "previous owner" may not have accounted for all his tax liability for the company.

In the preclosing communication, the lender made several recommendations. It recommended asking for a reduction in the purchase price, adding a provision in the purchase agreement that McDermott and Hoy are responsible for anything arising out of income tax returns before 2016, adding a provision that further negative accounting discrepancies will be reduced from the remaining price owed, and postponing closing in order to have an independent accountant look at the past and present books of NMM. According to the lender, "[McDermott and Hoy] are wanting a premium price for this business, but they have not supported this [in] the accounting, unreliable business records, and reduced net worth of the business and in my opinion do not deserve the large premium that they are presently asking."

But on July 17, 2015, the Nathans closed the purchase of NMM. Ten days later, the Nathans received an email from their lender. The lender stated concerns that the inventory, accounts receivable, and accounts payable were not reconciled from the previous balance sheet to the closing date. It requested the Nathans to provide "a copy of the audit that was supposed to have been completed by an independent contractor on all of the Inventory of the business."

On October 9, 2015, the Nathans sent their attorney an email outlining the discrepancies they found in the accounts payable, cash projection comparison, inventory, and loans. It detailed discrepancies of $3,500 of missing inventory, the accounts payable were off by $30,910.39, there were mischaracterized payments of $62,566.10, and cash projections were off for the first 2 months by $30,000 on the low end and $48,000 on the high end.

On December 15, 2015, the Nathans sent an indemnification demand letter to McDermott and Hoy. The letter detailed all the accounting discrepancies discussed in the October 2015 email. It further included discrepancies in the depreciation schedules of $85,292. The total demand for indemnification owed to the Nathans was $212,268.49.

### (iv) District Court's Orders

In the district court's order on McDermott and Hoy's motion for summary judgment, it summarized the requirements for indemnification under the purchase agreement. The district court analyzed "whether the Nathans complied with the requirement of giving notice of the breach of contract claim within the required forty-five day timeframe." It began by interpreting the purchase agreement's phrase "becomes aware, or should have reasonably been aware, of any such claim." The court acknowledged that the term "aware" did not indicate knowledge was required and that the provision further mandated the notice shall describe the claim in "reasonable detail."

It relied on a case from the U.S. Supreme Court where the Court interpreted "becoming aware" in the context of a bond. There, the Court explained,

> [T]he obvious meaning of "becoming aware," as used in this bond, is "to be informed of," or, "to be apprised of," or, "to be put on one's guard in respect to," and that no other meaning is equally admissible under the terms of the instrument. These are the definitions of the lexicographers, distinctly deducible from the derivation of the word "aware," and that is the sense in which they are here employed.[5]

Relying on this authority, the district court rejected the Nathans' argument that the term "aware" should be interpreted as having precise knowledge or a full grasp of the facts supporting a claim for indemnification.

---

[5] *Guarantee Co. v. Mechanics' &c. Co.*, 183 U.S. 402, 420, 22 S. Ct. 124, 46 L. Ed. 253 (1902).

After interpreting "becomes aware," the district court determined when the Nathans became aware of their claims. The Nathans sent an email to their attorney listing financial discrepancies, but it was not until December 15, 2015, when the Nathans sent the letter to McDermott and Hoy outlining the same discrepancies and demanding indemnification. It concluded that at the latest, the Nathans became "aware" of their claims by October 9, 2015, and that notice was not sent within 45 days. Therefore, the court found no genuine issue of material fact and ordered that McDermott and Hoy were entitled to summary judgment regarding the breach of contract claim.

The district court then analyzed whether the Nathans could maintain a theory of recovery for fraudulent misrepresentation. The court contrasted our decisions in *Cimino v. FirsTier Bank*[6] and *deNourie & Yost Homes v. Frost*.[7] The court reasoned that like the situation in *Cimino* and in contrast to the circumstances in *deNourie & Yost Homes*, the Nathans' allegations for fraudulent misrepresentation and negligent misrepresentation were based on the same conduct that formed their breach of contract claim. It found that because the financial information contained in the documents was subject to written representations in the purchase agreement, the Nathans failed to plead their misrepresentation claim based on independent facts from their breach of contract claim. The court granted McDermott and Hoy's motion for summary judgment concerning the misrepresentation claim.

In a separate order, the district court considered McDermott and Hoy's counterclaims. The district court found that McDermott and Hoy presented prima facie evidence of breach of the promissory note. It granted both McDermott's and Hoy's counterclaims and ordered the Nathans to pay $113,541.53 to McDermott and $75,694.35 to Hoy.

[6] *Cimino v. FirsTier Bank*, 247 Neb. 797, 530 N.W.2d 606 (1995).

[7] *deNourie & Yost Homes v. Frost*, 295 Neb. 912, 893 N.W.2d 669 (2017).

In the district court's order on the motion to alter or amend, it acknowledged that it had not addressed the Nathans' affirmative defense. The court determined that because it found for McDermott and Hoy on their counterclaims, the Nathans' recoupment defense survived. This was true, the court found, because the Nathans' recoupment defense arose out of the same transaction as the counterclaims.

Turning to the merits of the recoupment defense, the district court analyzed whether the Nathans could meet their burden of proving misrepresentation. As required on summary judgment, the court viewed the evidence in the light most favorable to the Nathans. The court focused on whether the Nathans reasonably relied on the misrepresentations, which, the court acknowledged, required the court to examine the totality of the circumstances. The court explained that because, prior to closing, the Nathans received a letter from the lender outlining recommended steps regarding the purchase of NMM and did not act on any of them, no reasonable fact finder could determine that the Nathans' reliance on McDermott and Hoy's representations was reasonable. It granted the motion to alter or amend to the extent that it would address recoupment, determined that the Nathans could not have been entitled to recoupment, and ordered that the judgment not be modified.

### (b) Standard of Review

[2,3] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[8] In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such

---

[8] *Merrick v. Fischer, Rounds & Assocs.*, 305 Neb. 230, 939 N.W.2d 795 (2020).

party the benefit of all reasonable inferences deducible from the evidence.[9]

### (c) Contract Interpretation

[4-7] Before addressing the Nathans' specific arguments, we recall general principles of contract interpretation. The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review.[10] A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.[11] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[12] A determination as to whether an ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties have suggested opposite meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.[13]

The Nathans do not point to a conflicting definition or meaning of the term "aware." They simply argue that because there is no definition in the purchase agreement or a legal definition, the word "aware" is ambiguous. And based on their assertion that the lack of definition makes the term ambiguous, they argue it is a question of fact for the jury to decide. We disagree.

As stated earlier, the interpretation of a contract and whether it is ambiguous are questions of law for the court to decide. It was within the province of the court to determine if the agreement's language was ambiguous. The court determined it was not. We agree.

---

[9] *Id.*

[10] *DH-1, LLC v. City of Falls City*, 305 Neb. 23, 938 N.W.2d 319 (2020).

[11] *Id.*

[12] *Id.*

[13] *Id.*

We determine the meaning of "aware" in the context of the entire purchase agreement. The agreement provided that the claiming parties must give notice within 45 days after they become aware or reasonably should have been aware of their claim and that the notice must describe the claim in "reasonable detail." Viewing the agreement as a whole, the term "aware" means something more than mere notice of a claim. And we agree that because the parties specifically defined "knowledge" but did not define "aware," "[t]o be aware is not the same as to have knowledge."[14]

The Nathans argue that the U.S. Supreme Court did not actually define the term "aware" and only distinguished it "somewhere in the nebulous space between 'notice' and 'knowledge.'"[15] The Court did define "becoming aware" as "'to be informed of,' or, 'to be apprised of,' or, 'to be put on one's guard in respect to.'"[16] The Oxford English Dictionary defines "aware" as "[i]nformed, cognizant, conscious, sensible."[17] This plain and ordinary meaning of "aware" supports the Court's interpretation. We accept these definitions as the unambiguous meaning of "aware."

Because the meaning of "aware" is unambiguous, we next turn to whether there was a genuine issue of material fact as to when the Nathans became aware of their claim. The evidence presented to the district court showed that the Nathans were informed, conscious, and cognizant of their claim by October 9, 2015. On that date, the Nathans detailed and reconciled several accounting discrepancies. The December indemnification letter reiterated several bases and amounts for the claim in the October email. We agree with the district court that at the latest, the Nathans were aware of their claim by the time of the October email. Because the Nathans were aware of their

[14] See *Guarantee Co. v. Mechanics' &c. Co., supra* note 5, 183 U.S. at 420.

[15] Brief for appellants at 19.

[16] *Guarantee Co. v. Mechanics' &c. Trust Co., supra* note 5, 183 U.S. at 420.

[17] "Aware," Oxford English Dictionary Online, http://www.oed.com/view/Entry/13892 (last visited June 17, 2020).

claim at the time of the October email, they had 45 days to send written notice of the claim to McDermott and Hoy. The Nathans sent the indemnification demand letter on December 15, 2015. The indemnification demand letter was clearly beyond the 45-day timeframe. Therefore, the Nathans were precluded from recovering the breach of contract claim.

The amended complaint included two theories for breach of contract: breach of warranty and bad faith. Because the indemnification letter was not sent within 45 days, it precluded every breach of contract claim.

### (d) Tort Claim

The Nathans argue that the district court mischaracterized their misrepresentation claim as a contract claim. They assert that their amended complaint and evidence provided an independent ground for recovery under fraudulent or negligent misrepresentation. They contend that the conduct to support the misrepresentation claim arose before the purchase agreement was executed and, therefore, could not rise to the same conduct as a breach of contract.

[8] It is certainly possible to assert independent contract and misrepresentation claims. A party who fraudulently induces another to contract and then also refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims that may be pursued to satisfaction consecutively.[18]

[9,10] But merely alleging both theories does not make them separate wrongs. To determine whether an action is based on a contract or a tort, a court must examine and construe the petition's essential and factual allegations by which the plaintiff requests relief, rather than the legal terminology utilized in the petition or the form of the pleading. Consideration must be given to the facts which constitute the cause of action.[19] If the petition contains a cause of action for

---

[18] *deNourie & Yost Homes v. Frost, supra* note 7.

[19] *Cimino v. FirsTier Bank, supra* note 6.

breach of contract, additional averments appropriate to a cause of action for a wrong will not change the action from contract to tort, and if there is a doubt as to the character of the action, it will be resolved in favor of an action in contract. In such an instance, the statements appropriate to an action in tort will be considered surplusage.[20]

In order to apply these precepts, we first examine our decisions which were contrasted by the district court. We then note a federal appeals court decision applying our law.

In *Cimino*,[21] a seller sued a bank for breach of contract and several other tort actions based on its failure to approve the sale of a company. The bank moved to strike several factual paragraphs and all the tort claims. The district court granted the motion and dismissed the tort claims. On appeal, we discussed whether the seller pled independent facts sufficient to sustain separate contract and tort actions. We reasoned that each allegation pled in the tort claims related directly to the contract claim. We agreed with the district court that the seller failed to allege separate and distinct facts that could stand alone as a tort action.

In *deNourie & Yost Homes*,[22] buyers defaulted on loans owed to a contractor for construction of a new home. The contractor brought an action alleging several theories of recovery, including fraud and breach of contract. We discussed maintaining tort and contract claims in the context of the election of remedies doctrine. We stated, ""A party who fraudulently induces another to contract and then also refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims that may be pursued to satisfaction consecutively.""[23] We reasoned that

---

[20] *Id*.

[21] *Id*.

[22] *deNourie & Yost Homes v. Frost, supra* note 7.

[23] *Id*. at 929, 893 N.W.2d at 682 (quoting *Davis v. Cleary Building Corp.*, 143 S.W.3d 659 (Mo. App. 2004)).

the breach of contract action was based on the buyers' failure to pay the amounts due and that the fraudulent concealment action was based on the false representations made by the buyers, which induced the contractor to complete the home. "Because the causes of action were based on different obligations and were not repugnant to one another, [the contractor] could pursue both."[24]

In *Oriental Trading Co., Inc. v. Firetti*,[25] the Eighth Circuit discussed our case law on maintaining contract and tort actions. Third-party officers of a seller made false representations about "anti-dumping duties" on goods shipped from overseas, which induced the buyers to advance funds.[26] Relying on several of our cases,[27] the court reasoned that the fraudulent misrepresentation claim did not arise out of the contract. The court explained that the claims were distinguishable because the claims against the third-party officers arose not out of the terms of the contract with the seller but from representations they made which caused the buyers to advance and lose funds. The court concluded that Nebraska law did not bar the buyers from maintaining the fraudulent misrepresentation claim.

Here, the Nathans' breach of contract and tort claims derive from the same factual basis. Their contract claim stemmed from allegedly false financial representations, which breached the purchase agreement's warranties and, in turn, breached the indemnification clause, which, under the agreement, was their sole remedy. In their attempt to assert tort theories, they

---

[24] *Id.* at 930, 893 N.W.2d at 683.

[25] *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938 (8th Cir. 2001).

[26] *Id.* at 941.

[27] See, *Streeks v. Diamond Hill Farms*, 258 Neb. 581, 605 N.W.2d 110 (2000), *overruled in part on other grounds, Knights of Columbus Council 3152 v. KFS BD, Inc.*, 280 Neb. 904, 791 N.W.2d 317 (2010); *Cimino v. FirsTier Bank, supra* note 6; *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 518 N.W.2d 910 (1994).

alleged that because McDermott and Hoy provided false financial representations and the Nathans relied upon them, they were damaged by purchasing NMM for more than it was worth. In other words, both claims stem from and depend solely upon the allegedly false financial representations. In this instance, the averments of fraudulent misrepresentation do not change the action and were correctly considered as surplusage.

Therefore, the Nathans did not present facts sufficient to sustain an independent tort action. We conclude that the district court did not err in granting summary judgment for McDermott and Hoy on the Nathans' amended complaint.

### (e) Counterclaims and Affirmative Defense

The Nathans argue that the district court erred in ordering damages on McDermott and Hoy's counterclaims because, they reason, damages are a question of fact for the jury and they dispute the amount due to McDermott and Hoy.

[11] Absent a defense, a promissory note is ordinarily a stand-alone, unqualified, enforceable promise to pay.[28] The evidence presented showed that the Nathans executed two promissory notes: one to McDermott and one to Hoy. The promissory notes were for a specified amount subject to interest of 16 percent per annum. The Nathans failed to pay on the notes and defaulted. McDermott and Hoy presented prima facie evidence of a breach of the promissory notes.

The Nathans assert that their defense of recoupment raised a genuine issue of material fact as to the amount of damages. They argue that the district court should not have evaluated the reasonableness of their reliance on the misrepresentations, because the evidence presented disputed whether their reliance was reasonable.

In order to determine whether the district court properly granted summary judgment on McDermott and Hoy's

---

[28] *Schuyler Co-op Assn. v. Sahs*, 276 Neb. 578, 755 N.W.2d 802 (2008).

counterclaims and ordered damages, we must first examine the recoupment defense.

[12] Of course, the Nathans bore the burden of establishing the defense. The burden of both pleading and proving affirmative defenses is upon the defendants, and when they fail to do so, they cannot recover upon mere argument alone.[29] Regarding McDermott and Hoy's counterclaims, the Nathans were the "defendants" for the purpose of that rule of law.

[13] As the district court correctly recognized, the Nathans' recoupment defense was not precluded by their untimely request for indemnification. The defense of recoupment survives as long as a plaintiff's cause of action exists, even if affirmative legal action upon the subject of recoupment is barred by the statute of limitations.[30] Because McDermott and Hoy (the "plaintiffs" on their counterclaims) presented prima facie evidence of their breach of contract claim, the Nathans' defense of recoupment survived.

[14] The Nathans' defense met the "same transaction or occurrence" test; recoupment must arise out of the same transaction or occurrence which is the basis of a plaintiff's action and is merely defensive, that is, does not seek an affirmative judgment in the action.[31] In response to the counterclaims, the Nathans pled that they were "entitled to setoff, offset, and recoupment against all amounts purportedly due and owing to [McDermott and Hoy] as a result of the misrepresentations and wrongdoing asserted in the [amended complaint]." It is clear that the Nathans alleged that McDermott and Hoy's misrepresentations arose out of the sale of NMM shares and execution of the promissory notes. We agree with the district court that the Nathans' recoupment defense arose out of the same transaction as the counterclaims.

---

[29] *Funk v. Lincoln-Lancaster Cty. Crime Stoppers*, 294 Neb. 715, 885 N.W.2d 1 (2016).

[30] *Becker v. Hobbs*, 256 Neb. 432, 590 N.W.2d 360 (1999).

[31] *Ed Miller & Sons, Inc. v. Earl*, 243 Neb. 708, 718, 502 N.W.2d 444, 452 (1993).

[15-17] To state an affirmative defense of recoupment, the defendant must prove the elements of his claim and that it occurred in the very same action as the plaintiff's claim against him.[32] A fraudulent misrepresentation claim requires a plaintiff to establish the following elements: (1) A representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result.[33] Negligent misrepresentation has essentially the same elements as fraudulent misrepresentation with the exception of the defendant's mental state.[34]

[18-20] In both negligent and fraudulent misrepresentation cases, whether the plaintiff exercised ordinary prudence is relevant to whether the plaintiff justifiably relied on the misrepresentation when the means of discovering the truth was in the plaintiff's hands.[35] A plaintiff is justified in relying upon a positive statement of fact if an investigation would be required to discover the truth.[36] In determining whether an individual reasonably relied on a misrepresentation, courts consider the totality of the circumstances, including the nature of the transaction; the form and materiality of the representation; the relationship of the parties; the respective intelligence, experience, age, and mental and physical condition of the parties; and their respective knowledge and means of knowledge.[37]

---

[32] *Qualsett v. Abrahams*, 23 Neb. App. 958, 879 N.W.2d 392 (2016).

[33] *Cullinane v. Beverly Enters. - Neb.*, 300 Neb. 210, 912 N.W.2d 774 (2018).

[34] *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013).

[35] *Lucky 7 v. THT Realty*, 278 Neb. 997, 775 N.W.2d 671 (2009).

[36] *Id*.

[37] *Id*.

Here, again, the district court correctly recognized that summary judgment required the court to view the evidence in the light most favorable to the Nathans. We must do likewise. In order to uphold the summary judgment against the Nathans on their recoupment defense, the evidence must be such that no reasonable fact finder could conclude that they exercised ordinary prudence in order to justifiably rely on the misrepresentations when the means of discovering the truth was in their hands.

In several cases, we have discussed the extent of ordinary prudence required to justify reliance on misrepresentations. In *Lucky 7 v. THT Realty*,[38] a buyer sought fraudulent and negligent misrepresentation claims against the seller for a commercial real estate transaction. It was later discovered that two sections of roof were partially deteriorated, even though the areas of the roof visible from the ground were recently replaced. We reasoned that justifiable reliance was a case-by-case analysis and that the court should consider the totality of the circumstances. We agreed with the district court's findings that the buyer was unreasonable in relying on the representations, because the buyer had experience buying commercial property, the contract explicitly stated that the purchase was based on the buyer's inspection, the purchase agreement provided for an inspection period, the buyer could have observed the roof's condition, and the warranty provided that the roof was replaced 3 years prior. We reasoned that the buyer understood the importance of inspecting the property and that an inspection would not have posed any hardship. We affirmed the district court's dismissal.

*Schuelke v. Wilson*[39] presented a similar factual scenario. A buyer sought rescission of a contract for the purchase of a business by fraudulent misrepresentation. The district court granted the rescission based on misrepresentations about

---

[38] *Id*.

[39] *Schuelke v. Wilson*, 250 Neb. 334, 549 N.W.2d 176 (1996).

the profitability of an owner-operated versus absentee-owner franchise. It determined that the seller tried to couch his misrepresentations about the adjusted statements of profit as ""'"guesstimates'"'" in an attempt to deflect any conclusion that the buyer was justified in relying on the representations.[40] It found that the seller made the representations knowingly and that the buyer relied on them based on the seller's years of experience.

In *Schuelke*, we reasoned that the district court erred in granting rescission because the buyer did not prove each element of fraudulent misrepresentation by clear and convincing evidence. We focused on the justified reliance element and the duty of ordinary prudence. We reasoned that the buyer was not justified in relying on the seller's representations, because the buyer expressed concern over adjusted statements of profit, the seller recommended verifying the figures with an accountant, the buyer was in possession of the documents, and the buyer took no further action. We concluded that under the circumstances, the buyer did not act with ordinary prudence, and that therefore, the record did not support rescission.

We acknowledge that both of those cases were decided after a trial and not on summary judgment. But that does not mean that a summary judgment cannot stand.

Here, the undisputed evidence showed that the Nathans received a letter from their lender detailing several recommendations prior to closing. The letter listed numerous financial discrepancies found in NMM's financial documents and recommended two additional clauses in the purchase agreement: one for past tax liability and one for further negative accountings that would reduce the amount owed on the promissory notes. It further recommended postponing closing, hiring an independent accountant to look into NMM, and requesting a price reduction. Instead, the Nathans agreed to move up closing by 2 weeks and did not hire an independent accountant.

---

[40] *Id*. at 341, 549 N.W.2d at 181.

Kelsey Nathan testified that the lender recommendations were only one reason for requesting a price reduction before closing. She indicated that the same discrepancies were found across the financial statements. She confirmed that there were accounting issues that could have been audited during the due diligence period.

Viewing the evidence in the light most favorable to the Nathans, we agree with the district court's conclusion that they did not exercise ordinary prudence when relying on the representations of McDermott and Hoy. Once inspected, the financial discrepancies were obvious to both the Nathans and the lender. Because the Nathans came across the same financial discrepancies, did not hire an independent accountant, ignored the recommendations of the lender, and closed the purchase 2 weeks early, no reasonable finder of fact could find that the Nathans exercised ordinary prudence and were justified in relying on McDermott and Hoy's misrepresentations. We conclude that the district court did not err in finding that the Nathans failed to meet their burden of proof and, thus, were not entitled to recoupment.

Accordingly, because the Nathans were not entitled to the affirmative defense of recoupment, the district court did not err in granting summary judgment on McDermott and Hoy's counterclaims. McDermott and Hoy's undisputed evidence presented prima facie evidence of breach of contract and damages. The Nathans point to no evidence, other than their recoupment defense argument, to dispute the amount of damages. Therefore, the district court did not err in granting summary judgment and awarding damages.

## 2. Claims Involving RBA and Nielsen

### (a) Additional Background

#### (i) Amended Complaint

In the amended complaint, the Nathans alleged the following: McDermott and Hoy retained RBA and Nielsen to act as brokers for the sale of NMM to the Nathans. McDermott

and Hoy made the majority of their communications to the Nathans through Nielsen. Throughout the course of the negotiations, RBA and Nielsen made several misrepresentations by providing documents and statements with inaccurate financial information. The Nathans raised several concerns about the veracity and accuracy of the statements. RBA and Nielsen, the Nathans claim, made several assurances to the Nathans that "the documents and statements provided by them and those provided by McDermott and Hoy [were] true and accurately depicted NMM's financial situation."

The amended complaint also set forth four allegations: RBA and Nielsen, as representatives of McDermott and Hoy, had a reckless disregard for the truth of the documents given to the Nathans. RBA and Nielsen intended for the Nathans to rely on the statements to purchase NMM. The Nathans could not have discovered that the documents were false until they had "time to review NMM's confidential financial records and books." The Nathans relied on the misrepresentations of RBA and Nielsen to purchase NMM.

In a separate count, the Nathans alleged that RBA and Nielsen made several representations that they were looking out for the best interests of all the parties. The Nathans allegedly relied on the representations to reasonably believe that RBA and Nielsen were acting as fiduciaries for them. They asserted that RBA and Nielsen owed and breached their fiduciary duties of honesty and loyalty to the Nathans when they were aware of and failed to disclose several misrepresentations made by McDermott and Hoy. The Nathans claimed that as a result of the misrepresentations and breach of fiduciary duty, they suffered a loss of no less than $695,000.

### (ii) Motion to Dismiss

By a motion to dismiss pursuant to § 6-1112(b)(6) of the rules of pleading, RBA and Nielsen sought dismissal from the case for failure to state a claim. The district court sustained their motion.

In the district court's order, it relied upon §§ 3.5 and 9.2 of the purchase agreement to resolve the misrepresentation claim. It found that pursuant to § 3.5, the Nathans agreed that they were "not relying on any statements, information or representations of [RBA] or any of RBA's agents, employees, representatives or affiliates, with respect to [the Nathans'] evaluation of [NMM] or of the Shares." The court reasoned that because § 3.5 expressly stated that the Nathans conducted their own due diligence and were not relying on RBA's representations and because § 9.2 affirmed that the purchase agreement was the entire agreement, fraud could not occur, because there was no reliance. Likewise, the court ruled, there could not be negligent misrepresentation, because this claim had essentially the same elements and the Nathans disclaimed reliance on RBA and Nielsen.

Lastly, the district court found that RBA did not breach a fiduciary duty, because it was undisputed that RBA and Nielsen were acting as agents for McDermott and Hoy, not the Nathans. The Nathans could not show, as a matter of law, that RBA and Nielsen owed any duty, contractual or otherwise, to them. The district court granted the motion to dismiss with prejudice. It overruled the Nathans' motion for summary judgment, as to RBA and Nielsen, as moot.

### (b) Standard of Review

[21] A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[41]

### (c) Fiduciary Duty

The Nathans argue that they pled sufficient facts to show that RBA and Nielsen held themselves out as a joint agent and fiduciary for McDermott, Hoy, and the Nathans. They contend that pleading that "Nielsen and RBA made multiple

---

[41] *Rutledge v. City of Kimball*, 304 Neb. 593, 935 N.W.2d 746 (2019).

representations to the [Nathans] that they were looking out for the best interests of all parties involved, including the [Nathans]," was sufficient to establish a fiduciary relationship. They assert that the district court improperly dismissed the claim by finding that RBA could not represent both parties when no legal authority precludes such an arrangement.

[22,23] Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his or her behalf and subject to his or her control, and the consent of the other to so act.[42] An agent and principal are in a fiduciary relationship such that the agent has an obligation to refrain from doing any harmful act to the principal, to act solely for the principal's benefit in all matters connected with the agency, and to adhere faithfully to the instructions of the principal, even at the expense of the agent's own interest.[43]

[24,25] In the amended complaint, the Nathans specifically admit that "McDermott and Hoy agreed to and did retain RBA and Nielsen to act as brokers for the sale of NMM to the [Nathans]." A party may at any and all times invoke the language of his opponent's pleadings on which the case is being tried on a particular issue as rendering certain facts indisputable.[44] The pleadings in a cause are not a means of evidence, but a waiver of all controversy, so far as the opponent may desire to take advantage of them, and therefore, a limitation of the issues.[45] It is abundantly clear from the pleadings that RBA and Nielsen had a fiduciary relationship with McDermott and Hoy. Because RBA and Nielsen were fiduciaries to McDermott and Hoy, they owed a duty to act solely for the benefit of McDermott and Hoy as their principals.

---

[42] *Deutsche Bank Nat. Trust Co. v. Siegel*, 279 Neb. 174, 777 N.W.2d 259 (2010).

[43] *Archbold v. Reifenrath*, 274 Neb. 894, 744 N.W.2d 701 (2008).

[44] *TNT Cattle Co. v. Fife*, 304 Neb. 890, 937 N.W.2d 811 (2020).

[45] *Id*.

The Nathans' allegation that RBA and Nielsen "were look-ing out for the best interests of all parties" was not sufficient to plead the presence of a fiduciary relationship when the amended complaint showed that RBA and Nielsen already had a fiduciary relationship with the opposing party. We agree with the district court that the Nathans "cannot show as a matter of law that RBA and Nielsen owed any duty, contractual or other-wise, to [the Nathans]."

Here, the Nathans' attempt to assert a duty owed to them by RBA and Nielsen is defeated by the admission in their own pleading. Even if it is possible for a broker to represent both parties in a business transaction, the amended complaint here did not raise a plausible claim of the existence of such a rela-tionship. Upon our de novo review, we agree that the Nathans failed to plead the existence of a fiduciary relationship with RBA and Nielsen. Therefore, the district court did not err in dismissing the claim for breach of fiduciary duty.

#### (d) Tort Claim

The Nathans argue that the district court erred in dismiss-ing the misrepresentation claim against RBA and Nielsen because it was contrary to "overwhelming Nebraska law."[46] They contend that the presence of a disclaimer does not relieve a principal or agent for fraudulent representations made by the agent concerning the subject matter of a contract.[47] They assert that RBA and Nielsen are liable for their own fraudulent conduct.

The purchase agreement precluded claims for misrepresen-tation against RBA and Nielsen. The clear and unambiguous language of the agreement showed that the Nathans expressly disclaimed any reliance on representations made by RBA and Nielsen. Additionally, the agreement explicitly stated that it

---

[46] Brief for appellants at 32.

[47] See *Gibb v. Citicorp Mortgage, Inc., supra* note 27.

was the entire contract between the parties and that it super-
seded "any prior understandings, agreements or representa-
tions by or among the parties, whether written or oral, that
may have related in any way to the subject matter hereof." We
must enforce the agreement, a contract, in accordance with
the plain meaning of its words.[48] As the Delaware Supreme
Court explained:

> "To fail to enforce non-reliance clauses is not to pro-
> mote a public policy against lying. Rather, it is to excuse
> a lie made by one contracting party in writing—the lie
> that it was relying only on contractual representations
> and that no other representations had been made—to
> enable it to prove that another party lied orally or in a
> writing outside the contract's four corners. For the plain-
> tiff in such a situation to prove its fraudulent induce-
> ment claim, it proves itself not only a liar, but a liar in
> the most inexcusable of commercial circumstances: in a
> freely negotiated written contract. Put colloquially, this is
> necessarily a 'Double Liar' scenario. To allow the buyer
> to prevail on its claim is to sanction its own fraudu-
> lent conduct."[49]

The Delaware court distinguished fraud claims based on repre-
sentations made outside of a merger agreement—which can be
disclaimed through nonreliance language—from fraud claims
based on false representations of fact made within the contract
itself—which cannot be disclaimed.[50] Because the purchase
agreement is unambiguous that the Nathans disclaimed any
reliance on representations made by RBA and Nielsen and
that the statements made in the agreement supersede all prior

---

[48] See *McCully, Inc. v. Baccaro Ranch*, 284 Neb. 160, 816 N.W.2d 728
(2012).

[49] *RAA Management v. Savage Sports Holdings*, 45 A.3d 107, 117 (Del.
2012) (quoting *ABRY Partners V, L.P. v. F & W Acquis. LLC*, 891 A.2d
1032 (Del. Ch. 2006)).

[50] *Id*.

statements, the Nathans, as a matter of law, cannot state a claim for misrepresentation.

[26-28] Moreover, as a general rule, where an obligation is that of a principal, a court cannot enforce the obligation against the agent as long as he or she is merely acting as agent.[51] An agent may be held liable for the agent's conduct, such as misrepresentation of a material fact, during a transaction on behalf of the principal.[52] An agent can be held liable if the agent makes some representation or performs some act on the agent's own responsibility without authorization from the principal.[53]

Although RBA and Nielsen are not parties to the purchase agreement, we cannot enforce an obligation of the principal against an agent, as long as he or she is merely acting as an agent.[54] In the amended complaint, the allegations for misrepresentation against RBA and Nielsen are nearly identical to those against McDermott and Hoy. The allegations admit that documents and assurances provided by McDermott and Hoy were made "directly and through RBA and Nielsen." Because the Nathans admitted that RBA and Nielsen were acting as agents when sending financial documents and assurances, we cannot enforce McDermott and Hoy's representation against them.

The amended complaint fails to allege any statements or documents that RBA and Nielsen made that were independent of the assurances and documents given to them by McDermott and Hoy. We conclude that the district court did not err in dismissing the Nathans' claim for misrepresentation against RBA and Nielsen.

---

[51] *Suzuki v. Gateway Realty*, 207 Neb. 562, 299 N.W.2d 762 (1980).

[52] *Edwin Bender & Sons v. Ericson Livestock Comm. Co.*, 228 Neb. 157, 421 N.W.2d 766 (1988).

[53] *Id*.

[54] See *Gibb v. Citicorp Mortgage, Inc., supra* note 27.

## 3. Cross-Appeal

### (a) Additional Background

McDermott and Hoy made two motions for summary judgment. In the district court's first order on summary judgment, it relied on Kelsey Nathan's affidavit for determining if a genuine issue of material fact existed under the 45-day timeframe for notice of indemnification. Her affidavit stated:

> [W]e only discovered these misrepresentations in or about December of 2015, after thorough investigation of NMM's records which were kept in electronic databases . . . . We were not given access to [these databases] prior to executing the [purchase agreement,] and we could not have discovered these misrepresentations without access to those records.

Relying on this evidence, the court initially found that "a genuine issue of material fact remain[ed] as to whether [the Nathans] should have reasonably been aware of their claims within forty-five days of signing the [purchase agreement]."

In the second motion for summary judgment, McDermott and Hoy moved for an award of attorney fees and court costs incurred after the denial of the first motion. They asserted that they were entitled to such fees and costs as a sanction against the Nathans, pursuant to Neb. Rev. Stat. § 25-824 (Reissue 2016).

In the district court's order on attorney fees, it outlined McDermott and Hoy's argument that Kelsey Nathan knowingly made false statements in her affidavit about the date the Nathans became aware of the misrepresentations. It acknowledged that the parties disagreed over the definition of the term "aware" in the purchase agreement. It explained that the Nathans argued being "aware" meant to have knowledge or a full grasp of the claims and that from their interpretation, they waited to bring their claims until they were certain of the figures. It reasoned that although this was an incorrect interpretation of "aware," "the Nathans brought an action with that

interpretation in mind, which is not so irrational or ridiculous
[as] to render the action frivolous." It denied McDermott and
Hoy's request for sanctions and attorney fees.

### (b) Standard of Review

[29,30] On appeal, a trial court's decision awarding or deny-
ing attorney fees will be upheld absent an abuse of discretion.[55]
A judicial abuse of discretion exists when the reasons or rul-
ings of a trial judge are clearly untenable, unfairly depriving a
litigant of a substantial right and denying just results in matters
submitted for disposition.[56]

### (c) Attorney Fees

On cross-appeal, McDermott and Hoy argue that the district
court erred in denying their motion for attorney fees because
the Nathans knowingly made a false statement to the court,
which precluded their first motion for summary judgment.
McDermott and Hoy assert this was the "sole basis for denying
summary judgment in favor of the [sic] McDermott and Hoy
(on all claims and counterclaims) at that time."[57] They contend
that because the Nathans were aware of their claims by the
October 2015 email, they knowingly gave false testimony to
the court, in violation of Neb. Rev. Stat. § 25-1336 (Reissue
2016). They claim that they have incurred significant expenses
since the denial of the first motion for summary judgment.
McDermott and Hoy argue that because the Nathans intention-
ally lied to the court, the court abused its discretion in denying
the motion for attorney fees.

[31,32] Section 25-824(2) allows a court to award attor-
ney fees and court costs "against any attorney or party who
has brought or defended a civil action that alleges a claim or
defense which a court determines is frivolous or made in bad
faith." A frivolous action is one in which a litigant asserts a

---

[55] *Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020).

[56] *Id.*

[57] Brief for appellees McDermott and Hoy on cross-appeal at 9.

legal position wholly without merit; that is, the position is without rational argument based on law and evidence to support the litigant's position. The term frivolous connotes an improper motive or legal position so wholly without merit as to be ridiculous.[58] Any doubt about whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question.[59]

McDermott and Hoy further direct our attention to § 25-1336.

> Should it appear to the satisfaction of the court at any time that any of the affidavits . . . are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.[60]

The district court's reasoning to deny attorney fees was not clearly untenable. It noted the Nathans consistently, albeit incorrectly, argued that they became "aware" of all their claims "in or about December 2015." Consistently with each motion for summary judgment, they did not change their position of when they became "aware" of their claims. We agree with the district court that although the Nathans' interpretation of "aware" was incorrect, they brought their action with the interpretation in mind. The Nathans' statement of fact was made with a good faith argument about the interpretation of "became aware," and they did not submit affidavits to the court in bad faith. Accordingly, the district court did not abuse its discretion in denying the motion for attorney fees.

## V. CONCLUSION

We conclude that because there was no genuine dispute of material fact, the district court did not err in granting summary

---

[58] *Seldin v. Estate of Silverman, supra* note 55.

[59] *Id.*

[60] § 25-1336.

judgment in favor of McDermott and Hoy on all claims. The evidence presented showed that the Nathans became aware of their claims more than 45 days before the indemnification letter was sent; the breach of contract claim and misrepresentation claim were based upon the same operative facts; and the Nathans could not have reasonably relied on the representations to sustain an affirmative defense of recoupment. The district court did not err in dismissing the claims against RBA and Nielsen, because the Nathans failed to plead the existence of a fiduciary duty; under the purchase agreement, they disclaimed any reliance on representations made by RBA and Nielsen; and they failed to plead how the representations were made outside the scope of the agency relationship. Further, we conclude that the district court did not abuse its discretion in denying attorney fees, because the Nathans' affidavits were submitted with a good faith interpretation of the agreement in mind. We affirm the judgment of the district court.

Affirmed.