CENTRAL CONSTRUCTION COMPANY, A CORPORATION, APPELLANT, V. DONALD LEROY OSBAHR ET AL., APPELLEES.

180 N. W. 2d 1

Filed October 9, 1970. No. 37447.

Kerrigan, Line & Martin, for appellant.

Homer E. Hurt, Jr., and William J. Tighe, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This was an action to foreclose a mechanic's lien. It was based on a contract involving the installation of

plastic siding and aluminum windows and doors on defendants' residence. The district court found that the written contract was procured by the plaintiff by fraud and misrepresentation, ordered that the written contract be reformed to conform to the oral agreement of the parties, and dismissed plaintiff's petition.

In July 1967, the defendants, Donald and Ardyce Osbahr, were the owners of a house in Hooper, Dodge County, Nebraska. Two representatives of the plaintiff called on defendants at their home. After several hours, the salesmen departed with a printed form contract which had been signed by the defendants. The cash price for the work to be done by plaintiff on defendants' residence was $2,720. Some of the blanks dealing with a time price were not filled in on the copy left with defendants. One paragraph of the printed agreement provided: "There are no representations, guarantees or warranties except such as may herein be incorporated, if any, nor any agreement collateral hereto, nor is this contract dependent upon or subject to any conditions not herein stated. Any subsequent agreement in reference hereto shall be binding only if in writing and if signed by all parties. Owner(s) understand and agree that Contractor does not make, and no agent of Contractor is authorized to make, any agreement with Owner(s) either concerning the use of the Owner(s)' premises as a 'model home' or concerning any payments, credits or commissions to be received by Owner(s) for referrals of prospective customers. Owner(s) further understand and agree that, in the event Owner(s) make any such agreements with any person whomsoever, Contractor has no responsibility whatsoever for the performance of such agreements. Contractor does hereby expressly disaffirm any such agreements purportedly made on its behalf."

The defendants testified that the initial contacts with them to arrange a meeting were represented to be for the purpose of discussing the use of their residence as a

"model home." The defendants were permitted to testify, over objection, that at the meeting they advised plaintiff's representatives that they could not pay any cost or expense for home improvements because of a Farmers Home Administration loan and mortgage on their residence. Defendants testified that plaintiff's salesmen represented to them that defendants' residence would be used by the plaintiff as a "model home," and that certain payments resulting from the sale of plaintiff's products arising out of such use of defendants' home would be credited to and discharge defendants' obligations under the contract. The entire installation would, in effect, be at no cost to defendants. Their testimony was that an oral agreement to that effect was made. There was also evidence that a similar pattern of representation had previously been followed by plaintiff with other persons.

There was also evidence that plaintiff's representatives told the defendants there was no need to read the contract. Whenever they attempted to read it, or inquired about or objected to portions of the contract they read, the representatives would explain to them that it did not apply to them because theirs was to be a model home and the printed form was the form for standard contracts.

The plaintiff's representative, in effect, conceded that he made an agreement with defendants about payments to be made to the defendants for the use of their residence as a "model home," but testified that such payments were to be made only "for every job that would be sold through recommendation of their home."

The plaintiff asserts on appeal that the trial court erred in admitting parol evidence to vary the terms of the written contract, and in finding that the written contract was procured by plaintiff through fraud and misrepresentation.

The term "parol evidence rule" is inaccurate. The rule is misleading, and its interpretation often con-

fusing. In discussing the parol evidence rule, Corbin states: "The use of such a name for this rule has had unfortunate consequences, principally by distracting the attention from the real issues that are involved. These issues may be any one or more of the following: (1) Have the parties made a contract? (2) Is that contract void or voidable because of illegality, fraud, mistake, or any other reason? (3) Did the parties assent to a particular writing as the complete and accurate 'integration' of that contract?

"In determining these issues, or any one of them, there is no 'parol evidence rule' to be applied. On these issues, no relevant evidence, whether parol or otherwise, is excluded. No written document is sufficient, standing alone, to determine any one of them, however long and detailed it may be, however formal, and however many may be the seals and signatures and assertions. No one of these issues can be determined by mere inspection of the written document." 3 Corbin on Contracts, § 573, p. 358.

As this court said in Ely Construction Co. v. S & S Corp., 184 Neb. 59, 165 N. W. 2d 562: "Parol evidence is generally admissible when it is offered for the purpose of explaining and showing the true nature of the transaction between the parties." For a full discussion of the parol evidence rule and its multiple exceptions see 3 Corbin on Contracts, Chapter 26, "The Parol Evidence Rule," p. 356.

Even if the many other exceptions to the parol evidence rule were unavailable, parol evidence has always been admissible to show that the execution of a written instrument was procured by fraud. In 1929, this court said: " 'It is well established that, as fraud vitiates everything which it touches, parol evidence is always admissible to show, for the purpose of invalidating a written instrument, that its execution was procured by fraud, or that, by reason of fraud, it does not express the true intentions of the parties.' * * * the rule is not

rendered inapplicable, even though there is an agreement between the parties or a provision in the contract 'that no verbal agreements affecting its validity will be recognized.' " Chapin v. Noll, 118 Neb. 318, 224 N. W. 687. See, also, Nathan v. McKernan, 170 Neb. 1, 101 N. W. 2d 756.

The plaintiff contends that fraud must relate to a present or preexisting fact and that any misrepresentations here dealt only with events in the future or acts to be done in the future. That rule has a well-recognized exception. "Fraud must relate to a present or preexisting fact and may not generally be predicated on an inference concerning any event in the future or acts to be done in the future unless such representations as to future acts are falsely and fraudulently made with an intent to deceive." Transportation Equipment Rentals, Inc. v. Mauk, 184 Neb. 309, 167 N. W. 2d 183. See, also, Sterner v. Lehmanowsky, 173 Neb. 401, 113 N. W. 2d 588.

While the evidence in this case is conflicting and disputed, it was sufficient to establish an intent to deceive. The finding that the written contract was procured by the plaintiff by fraud and misrepresentation is supported by the evidence. Fraud in a transaction may be proved by inferences which may reasonably be drawn from intrinsic evidence respecting the transaction itself, such as inadequacy of consideration, or extrinsic circumstances surrounding the transaction. See Trebelhorn v. Bartlett, 154 Neb. 113, 47 N. W. 2d 374.

The trial court saw and heard the witnesses and the evidence fully supports its findings and decree.

The judgment is affirmed.

AFFIRMED.