LESTER OLDS, APPELLEE, V. DEAN JAMISON, APPELLANT.

238 N. W. 2d 459

Filed February 5, 1976. No. 40170.

Richard A. Douglas of Herman & Herman, for appellant.

Michael V. Smith of Smith & King, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

This is an action for the replevin of wheat planted by the plaintiff and harvested by the defendant after the expiration of a lease. The court found generally in favor of the plaintiff and the defendant has appealed.

In January 1971, the plaintiff, Lester Olds, and Charles Matteson discussed and agreed on the general terms of a lease on a 480-acre farm owned by Matteson located

near Gordon, Nebraska. The plaintiff and Matteson went to the office of an attorney in Gordon, Nebraska, to have him prepare the lease for them. When the lease was ready some days later, it was mailed to Matteson at his residence in South Dakota, where he signed it. It was then returned to the attorney's office in Gordon where the plaintiff signed it. The lease was dated February 20, 1971. The lease was for 3 years from the 1st day of March 1971, until the 28th day of February 1974, for a total cash rental of $9,000, payable $1,500 on March 1, 1971, $1,500 on September 1, 1971, and like sums on the 1st day of March and September of each year thereafter during the term of the lease.

The lease provided that it was subject to the sale of the premises and that in the event the land was sold to someone other than the lessee "Lessee shall peaceably give up possession at the end of the lease year in which the premises are sold, provided Lessors give Lessees three (3) months notice of such sale and termination of lease."

The lease also gave the lessee a first option to purchase the premises for the same price as may have been negotiated and agreed with any other prospective purchaser.

The critical paragraph in the lease provides: "3. The Lessor shall have the privlege (sic) of harvesting any grain crop planted by him in the year subsequent to the expiration of this lease."

The plaintiff took possession of the farm on March 1, 1971. At that time there was a wheat crop growing on the land which had been planted by a previous tenant who returned in the summer and harvested the crop. On June 29, 1971, the lessor, Matteson, notified plaintiff that he had a person interested in purchasing the farm and that plaintiff had first option to purchase. The plaintiff was unable to finance a purchase. Matteson then sold the land to defendant, Dean Jamison, and his wife on an installment contract dated October 9,

1971.  The plaintiff was never given any notice of sale
by the lessor nor any notice that the lease would ter-
minate at the end of lease year, but was told that he
could continue on the farm.  Plaintiff paid the rent to
Matteson on March 1, 1971, and September 1, 1971, and
paid the rent to Jamison on March 1, 1972, and Septem-
ber 1, 1972.  In January 1973, the plaintiff and defend-
ant agreed that plaintiff would feed, pasture, and look
after approximately 40 head of defendant's cattle instead
of paying cash rent that year.  The arrangement did
not work out and defendant removed his cattle from
the farm sometime in September 1973, and demanded
payment of cash rental for the balance of the year.
Plaintiff tendered $1,000, but the defendant refused it
as not enough.

Plaintiff summer fallowed the wheat land on the
farm in the summer of 1973, and in the fall provided
the seed and planted approximately 115 acres of winter
wheat.  In September the defendant notified the plain-
tiff that he would have to move at the termination of
the lease.  There is a direct conflict in the testimony
with respect to negotiations or an agreement between
the parties regarding the wheat.  The defendant's evi-
dence was that plaintiff was to be paid the costs of
summer fallowing and planting the wheat computed at
$20 an acre.  Plaintiff's evidence was that defendant
offered to buy the wheat for that price but was told
that plaintiff did not want to sell his wheat, and that
the amount offered was even less than the cost of
planting.  Defendant did not tender or pay the plaintiff
any amount for the wheat, and plaintiff did not pay
defendant any cash rent for the latter part of the 1973-
74 lease year.

On February 24, 1974, the plaintiff was informed by
defendant that the wheat belonged to the defendant and
that defendant was going to harvest it.  The plaintiff
vacated the premises and by letter dated February 28,
1974, informed defendant that plaintiff claimed the

wheat and intended to harvest it. The defendant thereafter harvested the wheat planted by the plaintiff and stored the 3,586 bushels in grain elevators. This replevin action followed.

The District Court found that the lease should be reformed by changing the word "lessor" to "lessee" in paragraphs 3 and 5, and that plaintiff had the right to receive the wheat crop, and entered judgment against the defendant for $11,776.32, the value of the wheat crop, less the cost of harvesting. The court also allowed $1,710 in set-offs to defendant on his counterclaim, which included the sum of $1,250 as the balance due on the cash rental for the 1973-74 lease year.

Defendant's assignments of error all center around the trial court's finding that the lease should be reformed by changing the word "lessor" to "lessee" in paragraphs 3 and 5. The basic position of the defendant is that there was no mistake or ambiguity in the lease and that it was therefore error to admit oral testimony to alter or vary the terms of the lease. Defendant also contends that the issue was not within the pleadings and that the lease could not be reformed on the ground of mistake because the lessor testified that it was not a mistake.

The principal argument rests on defendant's contention that the lease was the complete written expression of the parties' agreement, and that no parol testimony should have been admitted to interpret or alter its provisions.

The term "parol evidence rule" is in itself inaccurate and its interpretation is often confusing and misleading. See 3 Corbin on Contracts, § 573, p. 358. For a full discussion of the parol evidence rule and its multiple exceptions, see 3 Corbin on Contracts, Chapter 26, The "Parol Evidence Rule," p. 356.

Parol evidence is generally admissible when it is offered for the purpose of explaining and showing the true nature of the transaction between the parties.

Central Constr. Co. v. Osbahr, 186 Neb. 1, 180 N. W. 2d 139. In any event, this court has ordinarily applied the parol evidence rule only in the absence of fraud, mistake, or ambiguity. Securities Acceptance Corp. v. Blake, 157 Neb. 848, 62 N. W. 2d 132.

A written instrument is open to explanation by parol evidence when its terms are susceptible to two constructions or where the language employed is vague or ambiguous. Conflicting evidence relating to ambiguities and contradictory provisions in a written contract is for the finder of fact. Ely Constr. Co. v. S & S Corp., 184 Neb. 59, 165 N. W. 2d 562. Where the language and meaning of a written contract are not clear and unambiguous, the agreement must be interpreted or construed.

There is ample evidence of both mistake and of ambiguity in this record. The critical paragraph 3 reads: "The *Lessor* shall have the privlege (sic) of *harvesting* any grain crop *planted by him* in the year *subsequent* to the expiration of the lease." (Emphasis ours.) Taken literally, if the word "lessor" was correct, the entire paragraph is not only confusing but virtually meaningless. It is undisputed that the plaintiff was the only one who planted any wheat during the period of the lease. The lessor had no authority to plant wheat during the term of the lease, and the words "planted by him" could not reasonably refer to the lessor under any circumstances. If the paragraph was intended to refer to grain crops both planted and harvested subsequent to the expiration of the lease, there was no reason to require it for either the lessor or the lessee, and the paragraph is completely meaningless. To say the least, the paragraph is confusing, vague, and ambiguous as written.

In addition to the issue of ambiguity, the testimony is persuasive that the word "lessor" in paragraphs 3 and 5 was a mistake of the scrivener. Paragraph 5 of the lease reads: "*Lessor* agrees to graze the pastures in

a good and husband-like manner and carefully protect all buildings, fences, mills and improvements * * *." (Emphasis ours.) The lessee testified that under the actual agreement of the parties the word "lessor" in both paragraph 3 and in paragraph 5 was a mistake and should have been "Lessee." The lessor himself concedes that the word "lessor" should have been "lessee" in paragraph 5 but testified that it was not a mistake as to paragraph 3. At the same time he conceded that in the case of a lease for a cash rent, it was the common custom, where wheat was planted in the fall, for the tenant to harvest that wheat after his lease had expired. The defendant testified that when he received plaintiff's letter claiming ownership of the wheat, he took it to the attorney who had drawn the lease, and the attorney stated: "That's a mistake in the lease." The defendant also testified, however, that at other times the attorney had advised him that the wheat was his. The attorney died prior to trial and was unavailable to testify.

The defendant also contends that the lease could not be reformed upon the basis of a unilateral mistake, and that because the lessor testified that there was no mistake on his part as to paragraph 3, there is no basis for reformation. In Lippire v. Eckel, 178 Neb. 643, 134 N. W. 2d 802, we held that if a clause was inserted in a deed by mistake on the part of the scrivener who drew it, then the mistake was mutual, because it was contrary to the real intention and agreement of the parties. The fact that one of the parties to a contract denies that a mistake was made does not prevent a finding of mutual mistake nor prevent reformation. See McFadden v. American Oil Co., 215 Pa. Super. 44, 257 A. 2d 283; 76 C. J. S., Reformation of Instruments, § 28(a), p. 364. The evidence of mistake here was clear, convincing, and satisfactory.

Defendant also asserts that the issues of mistake and ambiguity were not within the pleadings and not prop-

erly before the court. At pretrial the principal issue set out for trial was: "Did plaintiff and Matteson (lessor) agree that plaintiff was to have the crop harvested after the expiration of the lease?" The facts were pleaded in detail although they did not specifically seek reformation of the lease. Where a written contract is the basis of an action and neither party asks for a reformation thereof, it is the duty of the court to ascertain its meaning and enforce it accordingly. Martin v. Reavis, 117 Neb. 219, 220 N. W. 238. Other assignments of error are without merit.

The trial court saw and heard the witnesses and the evidence fully supports its findings and decree. The judgment of the District Court was correct and is affirmed.

AFFIRMED.