775 N.W.2d 671 (2009)
278 Neb. 997
LUCKY 7, L.L.C., appellant,
v.
THT REALTY, L.L.C., and Pamela K. Watanabe-Gerdes, appellees.
No. S-08-1290.
Supreme Court of Nebraska.
December 4, 2009.
*672 Donald J. Buresh and John D. Stalnaker, of Stalnaker, Becker & Buresh, P.C., Omaha, for appellant.
Heather Voegele-Andersen, of Koley Jessen, P.C., L.L.O., Omaha, for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
Lucky 7, L.L.C., purchased commercial property consisting of a warehouse facility *673 abutted by an office building from THT Realty, L.L.C. (THT). After water leaked through the roof of the office building, Lucky 7 brought suit seeking damages for fraudulent and negligent misrepresentation based upon statements made by THT regarding the condition of the roof. After a bench trial, the district court dismissed both claims. The court found the evidence insufficient to show that THT or its agents intentionally misled Lucky 7 to its detriment. Lucky 7 does not appeal this finding. The court also found that Lucky 7 did not exercise ordinary prudence when it inspected the property, because the roof's condition was discoverable upon reasonable inspection. We agree and affirm.

BACKGROUND
This controversy centers on commercial property in Omaha, Nebraska. The property has three separate roofing systems one covering the warehouse and two separate roof levels on the office building. In September 2002, THT replaced the warehouse roof and obtained a 10-year warranty on the roof. THT did not replace the roof on the office building.
In December 2004, THT contracted with Coldwell Banker Commercial World Group (Coldwell Banker) to sell the property. Coldwell Banker's listing agent was Robert Pollard. To prepare the listing, Pollard requested information on the property. The information that THT provided stated that the building had a "[n]ew 10-year roof." Pollard testified that the statement about the roof's condition indicated to him that the entirety of the roof was new and under a 10-year warranty.
Using this information, Pollard created a property information sheet that Coldwell Banker circulated. Regarding the roof, the sheet states: "Roof: New 10-year." Pollard placed the information into circulation via mailings, fliers, and Internet listings.
William Beard, the managing partner of Lucky 7, discovered Coldwell Banker's listing. He contacted his real estate agent, who scheduled a showing for the property. Based upon the information sheet, Beard and his real estate agent believed that the property had a new roof with a 10-year warranty.
Beard attended three showings of the property. Beard testified that he believed the building had a new roof because the roof on the warehouse portion was visible from ground level and he could see that it was made with new roofing material. But standing on the ground, Beard could not see the two separate roof sections on the building's office portion. Those roof sections could be inspected by Beard only if he were on the roof. Beard admitted that if he had examined those two roof sections, he would have been able to see that they were made of a different roofing material and were not new. But based upon his visual inspections and the statements on the information sheet that the roof was new, Beard did not believe it was necessary to inspect the roof before entering into the purchase agreement.
Later in January 2005, Beard agreed to purchase the property. The purchase agreement, in relevant part, stated:
Buyer will have sixty (60) days from Seller's acceptance of this Agreement ("Inspection Period") to conduct such inspections, reviews and investigations of the Property, including all reports, topographical surveys, paid tax receipts, roof or building inspections, leases and any other information pertinent to the ownership, operation and management of the Property, as the Buyer determines necessary ("Inspections"). During the Inspection Period, Buyer and its agents and representatives shall *674 have the right to reasonable access to the Property....
. . . .
THIS OFFER IS BASED UPON BUYER'S PERSONAL INSPECTION OR INVESTIGATION OF THE PROPERTY AND NOT UPON ANY REPRESENTATION OR WARRANTIES OF CONDITION BY THE SELLER OR SELLER'S AGENT.
Before the parties closed on the purchase, Beard received a copy of the roof warranty. The warranty did not indicate whether it covered the entire roof; it stated only that it covered roofing material and did not specify whether the entire roof or just part of the roof was covered by the warranty. After purchasing the property, Beard assigned his interest to Lucky 7, which placed a tenant in the building.
Shortly afterward, the tenant informed Beard that the roof was leaking over the office area. A roofing contractor who examined the roof informed Beard that the two roof sections over the office building were not new. Beard also inspected the roof and saw that the warehouse roof was different from the office roof and that the office roof was not new.
In May 2005, the roofing contractor repaired portions of the roof. The repair costs totaled $1,503.36. The contractor also gave Beard an estimate to replace the roof sections on the office. Later, the contractor estimated that it would cost $4,500 for replacing the upper office roof and that the cost to replace the lower office roof was $24,200. Beard has since obtained updated estimates of $4,700 and $25,800.
Lucky 7 filed suit alleging that THT had intentionally and negligently misrepresented the roof's condition. The district court dismissed Lucky 7's complaint. Regarding the intentional misrepresentation claim, it found that although the advertisement and statements about the 10-year roof warranty were misleading, the evidence was insufficient to show that THT intentionally misled Beard to his detriment. In dismissing the negligent misrepresentation claim, the court found that because the roof's condition would have been obvious upon a reasonable inspection, Lucky 7 failed to show that it acted in an ordinarily prudent manner.

ASSIGNMENTS OF ERROR
Lucky 7 assigns two errors:
(1) The district court erred as a matter of law in applying the "ordinary prudence" standard to the negligent misrepresentation claim.
(2) In the alternative, the district court erred in finding that because Lucky 7 failed to inspect the roof, it did not exercise ordinary prudence.

STANDARD OF REVIEW
In a bench trial, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous.[1] But we determine questions of law independently of the trial court's conclusions.[2]

ANALYSIS
The first issue is whether ordinary prudence is a factor in determining whether Lucky 7 was justified in relying upon THT's representations. When the means of discovering the truth was in the hands of the party defrauded, we have held that no action will lie where ordinary prudence *675 would have prevented the deception.[3] Lucky 7 concedes that ordinary prudence is a factor in determining justifiable reliance in a fraudulent misrepresentation claim.[4] But it argues it is not a factor in a negligent misrepresentation claim. We disagree.
We have adopted the negligent misrepresentation definition in the Restatement (Second) of Torts § 552.[5] Under § 552, "[o]ne of the elements of a cause of action for negligent misrepresentation is justifiable reliance on the part of the plaintiff."[6] The Restatement reads, in relevant part:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.[7]
Negligent misrepresentation has essentially the same elements as fraudulent misrepresentation, with the exception of the defendant's mental state[8]:
In fraudulent misrepresentation, one becomes liable for breaching the general duty of good faith or honesty. However, in a claim of negligent misrepresentation, one may become liable even though acting honestly and in good faith if one fails to exercise the level of care required under the circumstances.[9]
In claims of fraudulent or negligent misrepresentation, the supplier of false information must have intended that the user of the information would be influenced by the information and rely on it.[10] But in a case of negligent misrepresentation, the defendant need not know the statement is false. That is, the defendant's carelessness or negligence in ascertaining the statement's truth will suffice for negligent misrepresentation.[11]
We understand Lucky 7's argument to be that once the defendant supplies information to the plaintiff, the plaintiff is not required to make any inquiry as to the accuracy of the information. We disagree. If a plaintiff is required to show he exercised ordinary prudence in relying on an intentionally false statement, we believe the ordinary prudence rule should apply with equal force absent a showing that the defendant intended the plaintiff to rely on a knowingly false statement. So *676 whether the plaintiff was justified in relying upon representations made by the defendant requires the same inquiry whether it is a fraudulent or negligent misrepresentation claim.[12] As summarized by the Illinois Appellate Court: "[N]o recovery for fraudulent misrepresentation, fraudulent concealment or negligent misrepresentation is possible unless plaintiffs can prove justifiable reliance, i.e., that any reliance was reasonable."[13] We hold that in both negligent and fraudulent misrepresentation cases, whether the plaintiff exercised ordinary prudence is relevant to whether the plaintiff justifiably relied on the misrepresentation when the means of discovering the truth was in the plaintiff's hands.
Lucky 7, however, argues that it was justified in relying on THT's representation that the roof was new. It argues the general rule is that a plaintiff is justified in relying upon a positive statement of fact if an investigation would be required to discover the truth.[14] But we have never held that an "investigation" includes an inspection of the property. To the contrary, we have rejected misrepresentation claims when the truth of the property's condition was obviously apparent to a potential buyer upon inspection.[15] In other cases, we have concluded that the buyer reasonably relied on a seller's misrepresentation only after concluding that an inspection could have been fruitless or that the seller interfered with the buyer's ability to inspect.[16] As other courts have noted, a plaintiff "`may not close his eyes to what is obviously discoverable by him.'"[17]
But when the plaintiff would not have discovered the needed information by inspection of the property, we have found his or her reliance on the defendant's statements reasonable. For example, in Cao v. Nguyen,[18] the buyers sought rescission of a purchase agreement based upon alleged misrepresentations by the sellers that the property was a duplex which could be rented to two families, when in fact the property was not wide enough to meet the municipal code requirement for a two-family dwelling. The sellers did not provide the buyers with information which would have placed them on notice that the home did not meet the municipal code requirement for a two-family dwelling. The sellers informed the buyers that they had rented the house to two families in the past, and the property was divided into two units. And, the advertisement for the property described it as a duplex. To prove the sellers' representations were false, the buyers would have had to contact the city, research the public records, and compare the building code to the actual structure of the home. The means of discovering the truth of the sellers' representations were not in the buyers' hands. Therefore, we concluded that the buyers' reliance was reasonable.
*677 Obviously, justifiable reliance must be decided on a case-by-case basis. In determining whether an individual reasonably relied on a misrepresentation, courts consider the totality of the circumstances, including "`"the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and their respective knowledge and means of knowledge."'"[19]
Here, the district court's findings suggest that despite THT's representations regarding the newness of the roof, Beard's reliance on the representations was unreasonable because of the following:
(1) Beard was a businessman with experience in purchasing commercial property.
(2) The limiting language in the purchase agreement: The contract explicitly stated that the purchase was based on the buyer's personal inspection and not conditioned on any representations made by the seller.
(3) The purchase agreement explicitly provided for an inspection period.
(4) Beard could have observed the roof's condition if he had examined it.
(5) The value of the building: Beard was purchasing a large commercial building for $1,750,000.
(6) The warranty indicated that the roof had been replaced in 2002, 3 years before Beard bought the building.
Under these circumstances, the district court found that ordinary prudence would demand that Beard inspect the building, including the roof, before finalizing the purchase.
We agree. The record shows that Beard had routinely examined heating and air-conditioning units on roofs, so an inspection of this roof did not pose any hardship. And as an experienced purchaser of commercial buildings, he understood the importance of inspecting the condition of the property. The district court was not clearly wrong in finding that Beard should have inspected the roof and that the condition of it would have been obvious had he done so.

CONCLUSION
Ordinary prudence is a factor in determining whether a plaintiff is justified in relying upon a defendant's representations. The district court did not err as a matter of law in applying an ordinary prudence standard to Lucky 7's negligent misrepresentation claim. We also conclude the court's factual findings were not clearly wrong. The district court looked at the context and type of transaction, and Beard's knowledge, experience, and access to pertinent information. Based upon those factors, the district court found that Beard was not justified in relying on THT's representations. We agree.
AFFIRMED.
NOTES
[1] See Evertson v. City of Kimball, 278 Neb. 1, 767 N.W.2d 751 (2009).
[2] See In re Interest of Tyler F., 276 Neb. 527, 755 N.W.2d 360 (2008).
[3] Gibb v. Citicorp Mortgage, Inc., 246 Neb. 355, 518 N.W.2d 910 (1994), citing Omaha Nat. Bank v. Manufacturers Life Ins. Co., 213 Neb. 873, 332 N.W.2d 196 (1983). Accord Schuelke v. Wilson, 250 Neb. 334, 549 N.W.2d 176 (1996).
[4] See Precision Enters. v. Duffack Enters., 14 Neb.App. 512, 710 N.W.2d 348 (2006).
[5] Restatement (Second) of Torts § 552 (1977). See Gibb, supra note 3.
[6] See Karel v. Nebraska Health Sys., 274 Neb. 175, 182, 738 N.W.2d 831, 838 (2007), citing Washington Mut. Bank v. Advanced Clearing, Inc., 267 Neb. 951, 679 N.W.2d 207 (2004).
[7] Restatement, supra note 5, § 552 at 126-27. Accord, Brummels v. Tomasek, 273 Neb. 573, 731 N.W.2d 585 (2007); Agri Affiliates, Inc. v. Bones, 265 Neb. 798, 660 N.W.2d 168 (2003); Gibb, supra note 3.
[8] Compare Restatement, supra note 5 with §§ 525 and 526. See Gibb, supra note 3.
[9] Gibb, supra note 3, 246 Neb. at 371, 518 N.W.2d at 921. See, also, Restatement, supra note 5, § 552, comment a.
[10] See Gibb, supra note 3.
[11] See Washington Mut. Bank, supra note 6. See, generally, Gibb, supra note 3.
[12] See Gibb, supra note 3.
[13] Neptuno v. Arbor, 295 Ill.App.3d 567, 575, 692 N.E.2d 812, 818, 229 Ill.Dec. 823, 829 (1998).
[14] See Omaha Nat. Bank, supra note 3.
[15] Christopher v. Evans, 219 Neb. 51, 361 N.W.2d 193 (1985); Bibow v. Gerrard, 209 Neb. 10, 306 N.W.2d 148 (1981); Dyck v. Snygg, 138 Neb. 121, 292 N.W. 119 (1940); Kucera v. Pellan, 132 Neb. 739, 273 N.W. 10 (1937).
[16] Foxley Cattle Co. v. Bank of Mead, 196 Neb. 1, 241 N.W.2d 495 (1976); Martin v. Harris, 121 Neb. 372, 236 N.W. 914 (1931); Donelson v. Michelson, 104 Neb. 666, 178 N.W. 219 (1920).
[17] Ritchie v. Clappier, 109 Wis.2d 399, 404, 326 N.W.2d 131, 134 (Wis.App.1982).
[18] Cao v. Nguyen, 258 Neb. 1027, 607 N.W.2d 528 (2000).
[19] Finomore v. Epstein, 18 Ohio App.3d 88, 90, 481 N.E.2d 1193, 1196 (1984), citing 37 Am.Jur.2d Fraud and Deceit § 248 (1968).